THE PEOPLE OF THE STATE OF NEW YORK ex rel. THE CITY OF NEW YORK, Appellant, *v.* TIMOTHY L. WOODRUFF et al., Composing the Commissioners of the Land Office of the State of New York, et al., Respondents.

1. NEW YORK CITY — POWER OF COMMISSIONERS OF LAND OFFICE TO GRANT LAND UNDER WATER WITHIN THE CITY AGAINST PROTEST OF BOARD OF DOCKS. Under section 86 of the charter of the city of New York (L. 1897, ch. 378), the Commissioners of the Land Office have power to grant to a riparian owner land under water within the city limits, notwithstanding the protest of the Board of Docks.

2. POWERS AND DUTIES OF BOARD OF DOCKS UPON APPLICATION FOR GRANT — ULTIMATE DECISION RESTS WITH COMMISSIONERS OF LAND OFFICE. The Board of Docks has no power to determine whether the grant shall issue, or even to recommend that no grant shall issue, and its functions are purely advisory. Upon notice of the application therefor its duty is confined to examining into it and reporting to the Commissioners of the Land Office the conclusions which lead it to determine that the issuing of the grant will conflict with the rights and public interests of the city, or that render necessary the insertion in the grant, if issued, of certain terms and conditions which will protect the public interests of the city in respect to navigation and commerce, and while the commissioners are bound to give careful consideration to its conclusions and recommendations, the ultimate determination as to whether the grant shall issue, and, if issued, the terms and conditions thereof, rests with them and not with the Board of Docks.

*People ex rel. City of New York* v. *Woodruff.* 57 App. Div. 273, affirmed.

(Argued February 27, 1901; decided April 16, 1901.)

APPEAL from an order of the Appellate Division of the Supreme Court in the third judicial department, entered January 21, 1901, affirming the determination of the Commissioners of the Land Office in making grants of land under water to the defendant The Astoria Light, Heat and Power Company.

The facts, so far as material, are stated in the opinion.

*John Whalen, Corporation Counsel* (*Charles Blandy* of counsel), for appellant.    In the face of the remonstrance of the Board of Docks, the Commissioners of the Land Office were without power to issue the grants.    (L. 1897, ch. 378, § 86; *People ex rel.* v. *Woodruff*, 39 App. Div. 123.)    The right to determine the question whether the issuance of such a grant would or would not conflict with the rights of the city or be otherwise injurious to the interests of the city, is a matter the determination of which rested solely with the Board of Docks. (*People ex rel.* v. *Dalton*, 158 N. Y. 175; *Langdon* v. *Mayor, etc.*, 93 N. Y. 129; *Sage* v. *Mayor, etc.*, 154 N. Y. 80.)

*John C. Davies, Attorney-General, Albert B. Boardman* and *Henry L. Stimson* for respondents.    The language of section 86 of the charter of the city of New York not only does not support the city's contention, but clearly shows that no such veto power was intended to be given.    (*People ex rel.* v. *Woodruff*, 39 App. Div. 123; 159 N. Y. 536; *Matter City of New York* v. *Comrs. Land Office*, 25 Misc. Rep. 202.)    Such a construction of section 86 of the charter as the city contends for should not be given to it by implication.    (*Matter of Curser*, 89 N. Y. 403; *People ex rel.* v. *Palmer*, 52 N. Y. 88; *Mongeon* v. *People*, 55 N. Y. 616; *Weiler* v. *Nembach*, 114 N. Y. 38; *Dermott* v. *State*, 99 N. Y. 101; *Mayor, etc.*, v. *D. D., E. B. & B. R. R. Co.*, 112 N. Y. 137; *Charles River Bridge Case*, 11 Pet. 420.)    The general policy of the New York city charter towards the city's water front shows that the framers of that instrument could not have intended to give to the dock board the power contended for by the city.    It shows that, on

the contrary, they intended to continue the historic policy of developing the water front by means of private enterprise. (*People ex rel. v. Woodruff*, 39 App. Div. 123; *Langdon v. Mayor, etc.*, 93 N. Y. 143; *Kingsland v. Mayor, etc.*, 110 N. Y. 575; *Matter of Mayor, etc.*, 135 N. Y. 261.) The effect of the city's claim would be to deprive riparian owners of well-established rights. (*Rumsey v. N. Y. & N. E. R. R. Co.*, 133 N. Y. 79; *Saunders v. N. Y. C. & H. R. R. R. Co.*, 144 N. Y. 75; *Hedges v. W. S. R. R. Co.*, 150 N. Y. 150; *Ill. C. R. R. Co. v. Illinois*, 146 U. S. 445; *Yates v. Milwaukee*, 10 Wall. 497; *Sage v. Mayor, etc.*, 154 N. Y. 61; *Beekman v. T. A. R. R. Co.*, 153 N. Y. 157.)

BARTLETT, J.  The properties of the defendant, The Astoria Light, Heat and Power Company, are located at Astoria, Long Island. The predecessors in title of the company obtained from the state certain grants of land under water some years before the applications involved in the present proceeding.

In 1890 the Federal government, through the war department, determined to open Berrian creek, which extends from the easterly portion of the company's property to the East river. This creek flows along the southerly side of Berrian island, owned by the company, and the northerly side of other property of the company lying further south. This laying out of a new bulkhead line cut off the company from a certain portion of the land under water embraced in the former grants.

In March and May, 1899, the company applied to the land commissioners for certain parcels of land under water lying in front of the uplands owned by the company. The present application was made for the purpose of rounding out the strip of land previously granted and conforming the company's land under water to the changes in the pier and bulkhead lines.

As required by section eighty-six of the Greater New York charter, notice of this application was given to the board of

docks of the city of New York.   At a meeting of that board held on the 16th day of June, 1899, the following resolution was adopted : " Resolved, that the secretary be and hereby is directed to notify the Commissioners of the Land Office that this department has examined into the application of The Astoria Light, Heat and Power Company for grants of land under water at Berrian Creek and Berrian Island, Borough of Queens, and finds that the granting of the same will conflict with the rights of the city under the provisions of Chapter 378 of the Laws of 1897, and would be otherwise injurious to the public interests of the City of New York, and that, therefore, the board protests against the granting of said application."

No hearing was given before the board of docks to any of the interested parties, and the board rests satisfied with stating that the granting of these applications would conflict with the rights of the city under the charter, which is the statute cited, and would be otherwise injurious to the public interests of the city.

On June 22d, 1899, a public hearing was had before the standing committee of the commissioners of the land office, and the board of docks was there represented by counsel. This committee subsequently reported that the land commissioners were authorized to make the grants applied for, notwithstanding the protests of the board of docks.   On December 7th, 1899, the land commissioners made the grants and patents were duly issued.

The material portion of section eighty-six of the Greater New York charter, the construction of which is involved in this proceeding, reads as follows : " If application be made to the commissioners of the land office by the riparian proprietor for a grant of soil or land under water within the city of New York, as herein constituted, said commissioners shall give notice thereof to the board of docks of the city, which shall examine into such application and determine whether the granting of the same will conflict with the rights of the city under this act or be otherwise injurious to the public interests of the said city, and shall report their conclusions to said

commissioners who shall insert such terms and conditions in the grant recommended by the board of docks as will protect the public interests of the city in respect to navigation and commerce. The validity of any such grant or patent may be judicially determined in an action brought by and in the name of the city."

At the hearing before the standing committee the board of docks gave no evidence of the facts upon which it determined that the granting of these applications would conflict with the rights and public interests of the city. Special attention was called to this omission before the hearing was closed, and the learned counsel for the board of docks stated that his client had not put his office in possession of any of the details going to make up the determination. He further stated it was his opinion that as soon as the board of docks made known to the land commissioners it had reached a determination in the language of section eighty-six, it was not material to inquire what the considerations were that led to it.

The theory of the learned counsel seems to be that the board of docks is given absolute power in the premises to determine whether an application of a riparian owner for a grant of land under water within the limits of the city of New York shall be granted or not; that the bare statement in the protest filed by the board that the grant would conflict with the rights and public interests of the city, in the language of section eighty-six, is a complete bar to granting the application.

The case of *People ex rel. City of New York* v. *Woodruff* (39 App. Div. 123; affirmed in 159 N. Y. 536, on opinion below), which involved the application of one Whittemore and others for grants of land under water, is referred to by both parties in this proceeding as an authority in point. In that case the question was whether or not, as matter of legal right, the city was entitled to require the commissioners of the land office to insert in the grant or patent to the applicants the terms and conditions proposed by the board of docks. These conditions or covenants, in substance, provided that in case the

58

city of New York in the future should desire to improve the
water front of the city, the proper department should have
the right to enter upon the lands granted after giving notice
of its intention so to do, and that the grantees would surren-
der without compensation the premises, with improvements
thereon, or so much thereof as may or shall lie within the
lines of any exterior street, wharf or place determined upon
by the board of docks and approved by the commissioners of
the sinking fund.   Mr. Justice Merwin, who wrote the opinion
of the Appellate Division in the case cited and which was
adopted by this court, stated : " It is argued by the relator
that the terms and conditions submitted by the board of docks
are reasonable.   The commissioners thought otherwise, and I
am not persuaded that their conclusions in this respect are
erroneous.   The city apparently took the position that,
although they did not care to take and improve the property
for the public benefit, still they were not willing that the
riparian owner, the only other party that had any right to
obtain it, should do so, except at the peril of losing the benefit
of his improvements at any time the city should desire to
improve in its own way the water front.   It is difficult to see
how the protection ' of. the public interests of the city in
respect to navigation and commerce ' would require such a
burden to be placed upon an individual enterprise in a field
the city cared not to enter."

    The right to have inserted these conditions in the grant was
the only question before the court.   Judge Merwin said on
this point : " The present application assumes that the com-
missioners are in a position to give a grant of some kind, and
the only question is whether they are bound to insert the pro-
posed terms and conditions.   The validity of the grant, if one
is made, we are not called on to consider in this proceeding.
\*   \*   \*·· The statute evidently contemplates that there may
be applications, in regard to which the board of docks will
determine and so report, that the granting of the same will
conflict with the rights of the city, or be otherwise injurious
to its public interests.   Whether, in such a case, the commis-

sioners have any power to make a grant need not be here con-
sidered, for no such report was made, and this is not an action
for an injunction."

The question now presented for consideration is whether,
under section eighty-six of the charter, the commissioners of
the land office have the power to determine, notwithstanding
the protest of the board of docks, that the application of a
riparian owner shall be granted.

It was conceded by both counsel on the argument that the
quoted section of the charter does not clearly express the
precise powers conferred upon the board of docks in the
premises.

If it was the intention of the legislature to deprive the
commissioners of the land office of the power to make
grants of land under water to riparian owners in the city of
New York, unless the board of docks consented, it should
have been expressed in clear and unmistakable language. No
such intention is disclosed in the section as it now reads, and
it remains to determine the powers of the board of docks in
the premises.

The first duty of the board of docks, after receiving notice
of the application, is to "examine into such application and
determine whether the granting of the same will conflict with
the rights of the city under this act, or be otherwise injurious
to the public interests of the said city." It then becomes its
duty to report its "conclusions to the commissioners, who
shall insert such terms and conditions in the grant recom-
mended by the board of docks as will protect the public
interests of the city in respect to navigation and commerce."

It thus appears that the board of docks is first to investigate
as to whether the rights and interests of the city are injuri-
ously affected and then to report their conclusions to the said
commissioners, who shall insert such terms and conditions in
the grant as are recommended by the board of docks as will
protect the public interests of the city, not in any vague or
general way, but "in respect to navigation and commerce."
Following the literal reading of the section, no power is con-

ferred upon the board of docks to determine whether a grant shall issue, or even to recommend that no grant shall issue, but the board is confined to recommending the insertion in the grant of such terms and conditions as will protect the public interests of the city in respect to navigation and commerce. This section is imperfectly punctuated. The words " and shall report their conclusions to said commissioners who shall insert such terms and conditions in the grant recommended by the board of docks," etc., are printed without punctuation of any kind. It is evident that there should be a comma after the word " grant " and also after the word " docks," making a parenthesis of the words " recommended by the board of docks." The portion of the sentence under con-sideration would then be given the meaning as if it read " and shall report their conclusions to said commissioners, who shall insert such terms and conditions in the grant as are recom-mended by the board of docks," etc. In other words, it is the terms and conditions that are recommended by the board of docks and not the issuing of the grant. The use of the word " recommended " is significant. If, as contended by the counsel for the city, such terms and conditions as are recom-mended by the board of docks must be inserted in the grant, no force or effect is given to the word " recommended." Webster says to recommend is " to commend to the favor-able notice of another; to commit to another's care, confi-dence or acceptance, with favoring representations; to put in a favorable light before any one ; to bestow commendation on.'"

While in the case before us the board of docks only pro-tested against the issuing of any grants, it is nevertheless neces-sary to consider all the provisions of this section applicable to the rights of riparian owners in order to ascertain, if possible, what powers the legislature intended to confer upon said board. The closing sentence of the portion of the section quoted should also be considered in this connection. It reads : " The validity of any such grant or patent may be judicially determined in an action brought by and in the name of the city." It is obvious from this provision that it was within

the contemplation of the legislature that grants would be made by the commissioners of the land office which would be disapproved by the board of docks, and, therefore, this remedy of invoking a judicial determination was given to the city.

The functions of the board of docks as to applications of riparian owners are purely advisory; it is the duty of the board to examine into the application and report their conclusions to the commissioners which lead them to determine that the issuing of a grant will conflict with the rights and the public interests of the city, or that render necessary the insertion in the grant or patent, if issued, of certain terms and conditions which will protect the public interests of the city in respect to navigation and commerce.

The land commissioners are bound to give careful consideration to the conclusions and recommendations of the board of docks, but the power rests with them to ultimately determine whether the grant shall issue, and to decide upon its terms and conditions.

The construction of section 86 of the charter as contended for by the corporation counsel would strip the commissioners of the land office of all judicial powers as to lands under water in the city of New York and reduce them to mere ministerial officers to execute the expressed will of the board of docks.

The order of the Appellate Division should be affirmed, with costs.

PARKER, Ch. J., O'BRIEN, HAIGHT, MARTIN, VANN and LANDON, JJ., concur.

Order affirmed.